UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DEAN KOMULAINEN,

                Plaintiff,

         -against-

MONTENAY POWER CORPORATION, MONTENAY
ISLIP, INC., VIACOM, INC., and O'CONNOR
COMBUSTOR CORPORATION,

                **MEMORANDUM & ORDER**

                Defendants.

------------------------------------------------------------------X    03 CV 3279 (RJD)

MONTENAY POWER CORPORATION, MONTENAY
ISLIP, INC., AND VIACOM, INC.,

                Defendants/Third-Party Plaintiffs,

         -against-

BREMCO, INC.,

                Third-Party Defendant.

------------------------------------------------------------------X
DEARIE, Chief Judge.

Plaintiff Dean Komulainen brings this diversity action against Montenay Power Corporation, Montenay ISLIP, Inc., Viacom, Inc., and O'Connor Combustor Corporation for personal injuries stemming from a workplace accident that occurred in Islip, New York on October 27, 2000. Defendants Montenay Power Corporation and Montenay ISLIP (together "Montenay") filed third-party claims against plaintiff's employer Bremco, Inc. Bremco responded by filing counterclaims against Montenay.[1] Montenay subsequently settled its

---

[1] In actions not directly relevant to the present motions, Viacom, Inc. and O'Connor Combustor Corporation ("Viacom") also filed separate claims as third-party plaintiffs against Bremco, as well as cross-claims against Montenay, and Bremco filed counterclaims against Viacom. Viacom has since voluntarily dismissed its third-party complaint against Bremco.

common law contribution and indemnification claims against Bremco, while preserving its remaining claims. Montenay now moves for summary judgment on plaintiff's original personal injury claim, as well as on its contractual indemnification claim against Bremco. Bremco moves separately for summary judgment on Montenay's surviving third party claims.

## BACKGROUND

On October 27, 2000, plaintiff was inspecting and replacing radial seals on a turbine engine at the MacArthur Resource Recovery Facility ("MacArthur facility") in Ronkonkoma, New York, when a door or hatch fell and struck him on the back. The MacArthur facility is operated by defendant Montenay. At the time, plaintiff was employed by Bremco, which Montenay had hired as a contractor to perform maintenance activities at the facility during a scheduled bi-annual "outage."

The MacArthur facility incinerates trash from the town of Islip, in the process producing electricity for the Long Island Power Authority ("LIPA"). There are two identical cylindrical combustor-boiler turbines on-site, which process and burn trash. Each turbine is surrounded by a five-sided metal casing, or shroud, and each side has at least one door that opens out to provide access to the turbine for observation or maintenance. Bremco's Rule 56.1 Stat't ¶¶ 5, 6. Inside the boiler end of the turbine are a main roller, bearings, and seals. The seals help insulate the turbine and must be inspected and replaced periodically.

At the time of the accident, plaintiff was inspecting and replacing the radial seals lining the boiler-side of the turbine. While he was situated part-way between the boiler and the casing on top of the turbine, one of the doors fell and struck him in the middle of his back. With the

2

assistance of a co-worker, plaintiff was able to extricate himself and make his way down from the casing. Plaintiff declined hospitalization and chose instead to sit out the remaining two hours of his shift before returning with a co-worker to his home in Maine.

Plaintiff did not see a doctor about his injury until more than a week after the incident. Komulainen Dep. 179. Since then, he has received a series of consultations and treatments for a variety of physical and psychological ailments allegedly related to the incident, and has undergone microdiscectomy surgery to remove a portion of his vertebral lamina. Pls.' Resp. to Defs.' Interrog., Nos. 4-9. Plaintiff alleges negligence and violations of New York Labor Law (NYLL) § 200 on the part of Montenay. Montenay seeks summary judgment.

## DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000) (quoting Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991)). The court must draw all inferences from the underlying affidavits, exhibits, and depositions "in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). After drawing such inferences, if the court finds that an issue of material fact remains, summary judgment must be denied.

**B.  Montenay's Motion for Summary Judgment**

Montenay seeks summary judgment on plaintiff's negligence claim, as well as on its own third-party claim against Bremco for contractual indemnification.[2] Montenay claims that plaintiff has failed to establish a *prima facie* case of negligence since, "Montenay was not supervising the work nor did they instruct the plaintiff how to accomplish the task." Montenay's Mem. Supp. Mot. Summ. J. 3. Plaintiff responds that Montenay "affirmatively created [the] dangerous condition," and maintains that Montenay fails to meet its own burden of establishing its entitlement to judgment as a matter of law. Pls.' Mem. Opp. Summ. J. 3, 4. For the reasons laid forth below, the Court finds that Montenay is not entitled to summary judgment.

**1.  Affirmative Creation of a Dangerous Condition**

Plaintiff argues that, "[w]here the defendant or his agents or employees affirmatively created a dangerous condition, the usual inquiry concerning actual or constructive notice is irrelevant, and proof thereof is not required to establish a prima facie case." Pls.' Mem. Opp. Summ. J. 4. This argument relates to the allegation that "Montenay had opened the doors for [Bremco], secured some of the doors in an open position, but left the most dangerous door(s) unsecured." Id. at 6. Plaintiff cites several cases for this proposition, all of which concern traditional premises liability. The fact that Montenay may not have been "plaintiff's supervisor and [may] not [have] supervise[d] his work does not preclude a finding of liability against it on a

---

[2] In its Notice of Motion, Montenay seeks dismissal of "all claims, cross-claims, counter claims, third-party complaints, etc. and dismissing this matter in its entirety, as against [Montenay]," as well as its contractual indemnification claim against Bremco. Despite this global language, Montenay's Memorandum of Law only briefs plaintiff's negligence claim and its own third-party claim for contractual indemnification. The Court therefore constrains its analysis and conclusions to these issues. Montenay's indemnification claim is addressed, together with Bremco's, in section "C" *infra*.

4

common-law [negligence] theory if it is found to have negligently [created the dangerous condition]." Mendez v. Union Theol. Seminary in New York City, 793 N.Y.S.2d 420 (App. Div. 2005). Since Section 200 is "a codification of the common-law duty of a landowner to provide workers with a reasonably safe place to work," Lombardi v. Stout, 80 N.Y.2d 290 (1992), it is logical that this principle would apply to negligence liability under the statute as well, see, e.g., Mendez, 793 N.Y.S.2d at 421 ("Similarly, for the purposes of assigning liability under Labor Law § 200, the fact that [defendant may] not [have] supervise[d] plaintiff's work does not mandate summary judgment dismissing the claim where there are issues of fact as to whether the defective condition dated from the [defendant's actions]."); Bender v. TBT Operating Corp., 718 N.Y.S.2d 154, 158-59 (Sup. Ct. 2000) ("Under [Section 200], an owner or general contractor can be held liable for injuries caused as a result of a defective condition on the premises, if it can be shown that the owner or general contractor created the condition . . . .").

The question for the Court is whether plaintiff has demonstrated that Montenay affirmatively created the dangerous condition at issue in this case. Plaintiff argues in his memorandum that "the testimony of plaintiff and three co-workers was that Montenay had opened the doors for them, secured some of the doors in an open position, but left the most dangerous door(s) unsecured." Id. at 6. This claim is only partially supported by the record.

In his deposition, plaintiff stated repeatedly that the turbine doors were open when he arrived, that he did not know who opened them, and that he did not check to see if the door in question was tied up. Komulainen Dep. 48-49, 51, 52, 56, 57. Plaintiff's co-worker Tim Campbell indicated that "most of the time the customer [i.e., Montenay] opens and closes the doors," and that this was "pretty much standard procedure," Campbell Dep. 51-52, but also stated

that he did not know who opened the doors on this particular occasion, id. at 50. Meanwhile, David Libby, who was Bremco's "Leadman" on the job, noted that in his experience employees of the facility typically would remove the shroud doors before Bremco arrived, Libby Dep. 72, but also that Bremco employees assigned to the particular turbine were usually responsible for removing those doors, id. at 51.

Of more significance is the testimony of David Hockenbury, Bremco's Supervisor on the Montenay job. Amongst other things, Hockenbury stated: that plaintiff had been trained to replace seals and secure doors by Bremco, id. at 42; that Montenay instructed Bremco in how to conduct seal replacement and secure the doors, id. at 56; and that Bremco employees typically made their own "securing device[s]" if there was nothing to secure the door to, id. at 92. When asked about the state of the doors during the fall 2000 outage, Hockenbury responded that, "[t]hey're all open and they were all secured," id. at 22. Hockenbury also explained that the chains and locks used to secure those doors belonged to Bremco. Id. at 24-26. However, when asked whether Montenay removed the doors during the fall 2000 outage, he could not remember. Hockenbury Dep. 29. Hockebury also explained that, in the normal course of business, Montenay would inspect the turbines prior to Bremco's arrival on site, id. at 86, that they would generally need to secure the doors open in order to conduct that inspection, id. at 88, and that in such a scenario the doors would then be left open until Bremco arrived to begin its work, id.

Christopher Neu, Montenay's Vice-President for Operation Support, was also deposed and stated that in his opinion it would be Bremco's responsibility to secure the doors. Neu Dep. 167-68. Montenay's Facility Manager, Mark Novak, explained that during an inspection of the turbine after the accident, the specific door at issue stayed open without being tied back, despite

6

the fact that it opens to less than a ninety-degree angle. His explanation for this gravity-defying feat was that, since the door "was only open once in fifteen years; therefore, between rust and dust and everything else that's probably why it stayed open." Novak 170-71.

The upshot of all of these statements is: (1) that it would not have been unusual for Montenay to have opened the doors on the turbines prior to Bremco's arrival; (2) that in such an instance the doors would likely have stayed open until the day of the accident; and (3) that there is a possibility that the door in question might have stayed open, without being properly secured. There is no direct eye-witness testimony or other evidence in the record confirming which party opened and secured (or failed to secure) the doors on the turbine. Plaintiff has alleged that Montenay affirmatively created the dangerous condition at issue by opening and improperly securing the doors on the turbine. Although he provides little evidence to confirm that fact, Montenay fails to establish that a reasonable jury could not so find. This disputed issue of fact is therefore best left to the jury. Dillon v. Rockaway Beach Hospital & Dispensary, 284 N.Y. 176, 179 (1940) ("Circumstantial evidence is sufficient [to defeat summary judgment] if it supports the inference of causation or of negligence even though it does not negative the existence of remote possibilities that the injury was not caused by the defendant or that the defendant was not negligent. It is enough that he [plaintiff] shows facts and conditions from which the negligence of the defendant and the causation of the accident by that negligence may be reasonably inferred.") (citation omitted); Morales v. Foodways, Inc., 589 N.Y.S.2d 6, 8 (App. Div. 1992) (same). Montenay's motion for summary judgment on this claim is therefore denied.

## C. Bremco's Motion for Summary Judgment

Montenay brings a third-party complaint against Bremco for contractual indemnification, as well as breach of contract for failure to procure adequate insurance. Bremco moves for summary judgment claiming: (1) that Montenay has failed to submit evidence of a contract governing the work performed by plaintiff; (2) in the alternative, that the indemnification provision agreed to between the parties is unenforceable under New York law; and (3) that, in the event that the contract is enforceable, Bremco has effectively complied with the indemnification requirement and therefore is not in breach. Bremco's Aff. in Supp. of Mot. Summ. J. 4.

### 1. The Contract

Bremco's first argument is that "Montenay has failed to demonstrate that, at the time of the alleged accident, Bremco was performing work pursuant to a written contract setting forth the specific terms of the work. Montenay's amended third-party complaint fails to attach a contract or purchase order to which Bremco was performing work . . . ." Bremco Mot. Summ. J. 6. Montenay maintains that the October 2, 2000, purchase order to replace radial seals, together with a July 10, 1995, indemnification letter and the corresponding Certificates of Insurance issued to Montenay by Bremco, create and define a contractual relationship between the parties. Montenay's Aff. in Opp. Mot. Summ. J. ¶ 2

Bremco responds that because Montenay "only relied upon an 'indemnification sheet'" in its amended third-party complaint, and "never once before [its motion for summary judgment] disclosed the one-page Purchase Order," the purchase order should be disregarded by the Court pursuant to Fed. R. Civ. P. 37(c)(1). Bremco Reply Aff. 4. Contrary to this allegation, Montenay provided the purchase order as part of its Rule 26(a)(1) Disclosure on April 27, 2004. Montenay

Reply Aff. Ex. A. In addition, as Montenay points out, the purchase order was presented and marked as an exhibit during the deposition of Mark Novak on January 27, 2006, by Jarett Warner, counsel to Bremco, confirming that party's awareness and possession of the order prior to Montenay's motion for summary judgment. Bremco has failed to show that it was unaware of or otherwise unduly surprised by the appearance of the purchase order as evidence in this case.

"The interpretation of the clear and unambiguous terms of the parties' purchase orders, including the valid and enforceable indemnity clause . . . [is] for the court, since it is recognized in New York that purchase orders may create a binding contract." Kay-Bee Toys Corp. v. Winston Sports Corp., 625 N.Y.S.2d 208, 209 (App. Div. 1995) (citations omitted). Other than the timing and the form in which the purchase order appears in the record, Bremco does not otherwise challenge the validity of the document, its substantive terms, or the signature thereon. The terms of the purchase order commit Bremco to provide "labor to install radial seals, unit 2" during the "10/00 outage" for a price of $6,104.28. Montenay Aff. Ex. J. The back of the purchase order provides a list of terms and conditions, including "Work Indemnification." Id. In the absence of evidence to the contrary, the Court interprets this purchase order to constitute a contract governing the work on the relevant turbine (unit 2) during the fall 2000 outage. As such, Bremco is bound by all of the terms therein, including the indemnification provision. Huntington Intern. Corp. v. Armstrong World Industries Inc., 981 F.Supp. 134, 138 (E.D.N.Y. 1997).

### 2. **Contractual Indemnification**

Both parties ask for summary judgment on the issue of contractual indemnification. Bremco claims that New York's General Obligations Law ("GOL") prohibits the enforcement of the indemnification provision contained in the Montenay-Bremco indemnification sheet because

the provision improperly shifts liability for acts resulting from Montenay's own negligence to Bremco.

The GOL provides, in relevant part that:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances . . . purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable. . . .

McKinney's Gen. Obligations Law § 5-322.1. However, New York courts have held that "[w]ithout a finding of negligence on the part of [the promisee], General Obligations Law § 5-322.1's prohibition against indemnifying a contractor for its own negligence is inapplicable." Brown v. Two Exchange Plaza Partners, 76 N.Y.2d 172, 179 (1990); accord Colozzo v. Nat'l Ctr. Found., Inc., 817 N.Y.S.2d 256, 257 (App. Div. 2006) ("Although on its face, the indemnity provision . . . runs afoul of General Obligations Law § 5-322.1, [the provision] may nonetheless [be enforced if] the evidence established that plaintiff's injuries were not attributable to negligence on [the part of the promisee].") (citation omitted); cf. Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co., 89 N.Y.2d 786 (1997) (finding indemnification provisions unenforceable where negligence had been demonstrated against the party seeking enforcement).

Bremco alleges that "[t]he uncontroverted evidence is that at no time during the twelve years of operation of the Islip Facility through the date of the alleged accident did Montenay *ever* inspect the subject combustor door to ensure that it could properly be secured," id. at ¶ 31, and cites reports submitted by liability experts retained by plaintiff, Bremco and Viacom for their

opinions that Montenay was negligent for this failure, id. ¶¶ 36-41. Montenay contests these allegations and opinions. Montenay Reply Aff. ¶¶ 8-13. Even if the Court were to accept as true the fact that Montenay did not properly maintain the doors, the ultimate issue of liability would remain unsettled without a determination regarding who opened the door that struck plaintiff and whether or not it was properly secured. The Court has decided that those are issues of fact that cannot be determined on summary judgment.

If Montenay is found to have no negligence liability vis-a-vis plaintiff, it will have no need to seek indemnification against Bremco for costs related to plaintiff's injuries.[3] The Court has not ruled on Bremco's counterclaim or Viacom's cross-claims[4] against Montenay. However, the Court notes that if plaintiff or either of these third-parties were to prevail on their negligence claims against Montenay, Montenay would be precluded by § 5-322.1 from recovering under contractual indemnification from Bremco. Nevertheless, since the ultimate issues regarding liability remain undetermined, the Court denies summary judgment on both parties' contractual indemnification claims. See Pardo v. Bialystoker Ctr. & Bikur Cholim, Inc., 781 N.Y.S.2d 339, 344-45 (App. Div. 2004) ("[W]here the indemnitee's negligence remains unresolved, summary judgment in favor of the indemnitee on a claim for contractual indemnification is inappropriate.")

---

[3] The Court simply notes that these grounds may not preclude Montenay from asserting claims for indemnification related to the legal or other costs that may or may not have been contemplated in its indemnification agreement with Bremco independent of the success of plaintiff's action against Montenay.

[4] Viacom's cross-claims for indemnification were based on allegations of (i) wrongful conduct, and (ii) breach of contract against Montenay. Viacom's March 7, 2003 Answer with Crossclaims 4.

### 3. Breach of Contract

Bremco construes Montenay's complaint to allege breach of contract for failure to procure insurance and seeks summary judgment on that claim. The Court finds that Bremco has failed to demonstrate that it fulfilled its contractual obligations toward Montenay regarding insurance and indemnification.

The purchase order states in relevant part:

> When goods or services or other work is performed by the vendor on the premises of Montenay, the vendor shall *indemnify itself and shall establish and effect all certificates of insurance that may be requested* to satisfy Montenay including coverage for, but not limited to, indemnity and insurance provisions of any incidental, special, contingent or consequential damages arising in connection with the execution of this Purchase Order.

Montenay Affirmation Ex. J (emphasis added). The certificates requested are detailed in the 1995 indemnification sheet, which states that "[i]n order to perform work on-site at the MacArthur Waste-to-Energy Facility, each contractor must sign and agree to the following" and goes on to require that Bremco maintain insurance policies for "not less than $1,000,000" for worker's compensation, automobile liability, and comprehensive general liability insurance, and that Montenay Islip, Inc. and the Islip Resource Recovery Agency be assigned as certificate holders of those policies. Montenay's Third-Party Comp., Ex. B. The "Certificates of Liability Insurance" provided in Montenay's third-party complaint indicate that Bremco complied with these requirements by naming Montenay Islip, Inc. and the Islip Resource Recovery Agency as certificate holders of its policies for (i) general liability for $1,000,000, (ii) automobile liability for $1,000,000, (iii) excess liability for $5,000,000, and (iv) worker's compensation and employers' liability for $500,000. Id. at Ex. C. Coverage for the last item appears therefore to be

made out for only half of the amount required by the indemnification sheet.

To the extent that a contract existed between the parties based on the purchase order, indemnification letter, and Certificates of Insurance, a reasonable jury could determine that Bremco breached that contract by failing to maintain workers' compensation insurance of "not less than $1,000,000."[5] Therefore, Bremco's motion for summary judgment is rejected with regards to Montenay's breach of contract claim.

## CONCLUSION

For the reasons set forth above, the Court denies Montenay's motion for summary judgment on plaintiff's claims under Labor Law § 200 and common law negligence, and on its own contractual indemnification claim. Bremco's motion for summary judgment on Montenay's contractual indemnification and breach of contract claims is also denied.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2008

s/ Judge Raymond J. Dearie
───────────────────────
RAYMOND J. DEARIE
United States District Judge

---

[5] Bremco cites KMO-361 Realty Associates v. Podbielski, 678 N.Y.S.2d 323 (App. Div. 1998), in support of its contention that "[t]he fact that Royal [Insurance] may have denied Montenay's request for coverage does not mean Bremco breached any purported duty to obtain insurance for Montenay." Bremco's Mem. Law Supp. Mot. Summ. J., 17-18. In Podbielski, a New York Appellate Division court held that "defendant insurer's refusal to indemnify plaintiffs' project owner and construction manager is no basis for declaring, at this [summary judgment] juncture, that the decedent's employer breached its agreement with the construction manager to procure liability insurance." 678 N.Y.S.2d at 324. That holding, made in the context of a suit seeking declaratory judgment regarding an insurer's obligation, does not provide grounds for summary judgment for either party in this case.